UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

MARQUES McHERRIN, #03-B-3017

        Petitioner,

        -v-                                   06-CV-6095(MAT)
                                                     **ORDER**

THOMAS M. POOLE,

        Respondent.

---

### I.    Introduction

Petitioner Marques McHerrin ("petitioner") filed this *pro se* petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254 challenging his conviction following a jury trial in Erie County Court before Judge Timothy Drury on two counts of Rape in the First Degree (N.Y. Penal Law §§ 130.35(1), (4)) and one count of Sexual Abuse in the First Degree (N.Y. Penal Law § 130.65(1)). Petitioner was sentenced to three concurrent terms of imprisonment, the longest of which is eight years, in addition to five years of post-release supervision.

### II.   Factual Background and Procedural History

Petitioner's conviction arises out of an incident of forcible sexual contact with a twelve-year-old female acquaintance ("the victim") on January 3-4, 2003. The victim testified at trial that she was home alone with your younger brother when petitioner forced his way into her apartment after she partially opened the door for

him. T. 78-79.[1] Petitioner then dragged her into the hallway outside the apartment and warned her to be quiet. Petitioner lead the victim toward the basement, and, in trying to push the petitioner away, the victim fell down the basement stairs. Petitioner followed her into the basement and locked the door. He held her by her wrists and covered her mouth when she screamed. T. 80-81.

The victim recalled that petitioner tore off her pants and underwear as she screamed and tried to hit him, but that he was "too strong" and she could not fight him off. T. 84. Still holding the victim's wrists, petitioner penetrated the victim's vagina with his finger and with his penis. As petitioner began to have intercourse with the victim, she screamed and struggled to get away. T. 86. The victim kicked petitioner off her and tried to run upstairs, but petitioner grabbed her by the ankle, pulled her back and "got on top of [her] again." The victim testified that petitioner also started to kiss her neck. T. 88-89. After hitting petitioner with a piece of dryer pipe, she eventually escaped and ran upstairs to her neighbors' apartment. T. 92.

Dr. Jack Coyne, a pediatrician, testified for the prosecution and explained how a child could be raped without displaying signs of physical injury. T. 208-214. Two of the victim's neighbors testified that they called 911 when the victim, wearing only a

---

[1] Citations to "T.__" refer to the trial transcript.

jersey top, ran upstairs to their apartment in the early morning of January 4, 2003. T. 57, 124-25.

Petitioner testified on his own behalf and recalled a different series of events from the victim's version of the incident. On the evening of January 3, petitioner was celebrating his birthday at his apartment with a few friends. One of them, Jasmine Dixon ("Dixon"), is the victim's older sister. According to petitioner, Dixon invited petitioner to her apartment, which she shared with the victim, to continue drinking. T. 193-94, 233. Petitioner then went to Dixon's apartment, rang the lower apartment doorbell, and the victim answered and let him into the back hallway. T. 234. Petitioner sat by the stairway in the back hall to wait for Dixon, who had not yet arrived. A few minutes later, the victim told petitioner that her mother was coming home and insisted that petitioner leave. T. 234-35. He then walked back home to his apartment on Carl Street in Buffalo.

Following a jury trial, petitioner was convicted of two counts of rape and one count of sexual abuse. He appealed the judgment to the Appellate Division, Fourth Department, which unanimously affirmed his conviction. People v. McHerrin, 19 A.D.3d 1166 (4th Dept.), lv. denied 5 N.Y.3d 808 (2005). Petitioner did not seek post-conviction collateral relief in the state courts. He then filed the instant petition for habeas corpus pursuant to 28 U.S.C. § 2254, alleging four grounds for relief. (Dkt. # 1). For the

reasons that follow, the Court finds that petitioner is not entitled to habeas relief.

**III. Discussion**

    **A.    Standard of Review**

To prevail under 28 U.S.C. § 2254, as amended in 1996, a petitioner seeking federal review of his conviction must demonstrate that the state court's adjudication of his federal constitutional claim resulted in a decision that was contrary to or involved an unreasonable application of clearly established Supreme Court precedent, or resulted in a decision that was based on an unreasonable factual determination in light of the evidence presented in state court. See 28 U.S.C. § 2254(d)(1), (2); Williams v. Taylor, 529 U.S. 362, 375-76 (2000).

    **B.    Merits of the Petition**

        **1.    Right to Be Present at Material Stage of the Trial**

Petitioner first argues that his right to be present at sidebar conferences during *voir dire* was violated when interviews were conducted in his absence regarding juror bias and background. Petition ("Pet.") 22 ¶(A) (Dkt. #1). When this claim was raised on direct appeal, the Appellate Division determined that the record established that the trial court informed the petitioner that he had to right to be present and that petitioner waived that right. McHerrin, 19 A.D.2d at 1166.

A criminal defendant has the right "to be present at all stages of the trial where his absence might frustrate the fairness of the proceedings." Faretta v. California, 422 U.S. 806, 819 n. 15 (1975); accord Kentucky v. Stincer, 482 U.S. 730, 745 (1987). This right includes the right to be present generally for the impaneling of the jury and the pre-screening of potential jurors. Cohen v. Senkowski, 290 F.3d 485, 489 (2d Cir. 2002); Tankleff v. Senkowski, 135 F.3d 235, 246 (2d Cir. 1998). The right, however, is not absolute, and it is an open question whether it encompasses the right to be present at *voir dire* side bar conferences. See Sanchez v. Duncan, 282 F.3d 78, 83 fn. 4 (2d Cir. 2002) (declining to decide whether there is a "clearly established" federal right to be present at *voir dire* side bar conferences); see also Zaire v. Mitchell, No. 93 Civ. 6626(JG), 1996 WL 82391, at *3 (S.D.N.Y. 1996) ("There is not now, and there never has been, a right guaranteed under the Federal Constitution that a State or Federal defendant be present at a sidebar voir dire of a prospective juror.") (citing, *inter alia*, United States v. Ruggiero, 928 F.2d 1289, 1301 (2d Cir.), cert. denied, 502 U.S. 938 (1991) ("[D]ecisions as to when to question jurors and the manner of that inquiry are generally left to the trial judge's broad discretion.") (citations omitted)); accord Michaels v. Portuando, No. 99-CV-3195(JG), 2002 WL 1732813, at *11 (E.D.N.Y. July 23, 2002).

New York state law, on the other hand, specifically affords criminal defendants the right to be present at sidebar conferences during *voir dire*. See People v. Antommarchi, 80 N.Y.2d 247, 250 (1992) (defendant has a fundamental right to be present during sidebars at which prospective jurors are questioned about their ability to weigh evidence objectively and hear testimony impartially). This right "is not rooted in the [Federal] Constitution," but in New York Criminal Procedure Law § 260.20. People v. Vargas, 88 N.Y.2d 363, 375 (1996); People v. Mitchell, 80 N.Y.2d 519, 527 (1992) ("[I]n the usual scenario, limited exclusion from side-bar discussions with prospective jurors concerning general bias or hostility will not violate a defendant's constitutional right to be present, though, as in Antommarchi, it does violate a defendant's statutory right to be present.") Since the so-called Antommarchi right to be present is purely a provision of New York state law, and petitioner has not cited any federal statute or Supreme Court precedent holding that petitioner has a right to be present at sidebar conferences during *voir dire*, this ground does not support a claim for habeas relief.

### 2. Improperly Admitted Testimony

Petitioner next argues that the testimony of Dr. Jack Coyne was improperly admitted at trial. Pet. ¶ 22(B). Specifically, he contends that the doctor's testimony enlarged the definition of "penetration" contained in the statute (Penal Law § 130.00(1)) and

served to prejudice him by suggesting his guilt. See id. In rejecting petitioner's claim, the Appellate Division found it to be unpreserved for review and, in any event, without merit. McHerrin, 19 A.D.3d at 1166.

With respect to erroneous admission of evidence, it is well-settled that state evidentiary rulings generally do not implicate the federal constitution. Ohio v. Roberts, 448 U.S. 56, 66 (1979). In order to prevail on a claim that an evidentiary error deprived a petitioner of due process, he must show that the error was so pervasive as to have denied him a fundamentally fair trial. Collins v. Scully, 755 F.2d 16, 18 (2d Cir. 1985) (quoting Nettles v. Wainwright, 677 F.2d 410, 415-416 (5th Cir. 1982)). The record indicates that petitioner had a full and fair opportunity to cross-examine the prosecution's expert and present opposing views. The trial court properly charged the jury that they could accept or reject the expert testimony in whole or in part. T. 341. The court also charged the jury on the definition of sexual intercourse and penetration. Thus, prejudice, if any, was minimized by the court's instructions. Petitioner has not alleged a due process violation, and this claim for relief is dismissed.

### 3. Ineffective Assistance of Trial Counsel

In his appellate brief attached to the instant petition, petitioner cites a litany of errors allegedly committed by defense counsel in his representation. Appellate Br. 23-29. He contends,

*inter alia*, that trial counsel: (1) failed to consult petitioner during jury selection; (2) failed to call the doctor who examined the victim, or to call any expert witness; and (3) inadequately cross-examined a prosecution witness. Id. The Appellate Division, Fourth Department, held that "the evidence, the law and the circumstances of this case, viewed in totality and as the time of the representation, establish that [petitioner] received meaningful representation." McHerrin, 19 A.D.3d at 1167. The Court finds no reason to disturb the appellate court's finding. Petitioner's allegations fail because they are speculative and conclusory. Moreover, he has failed to show that he suffered prejudice as a result of these alleged errors.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his

attorney's] conduct falls within the wide range of reasonable professional assistance." <u>Id.</u> at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," <u>id.</u>, and may not second-guess defense counsel's strategy. <u>Id.</u> at 690. Here, petitioner has failed to demonstrate that his counsel's conduct was deficient within the meaning of <u>Strickland</u>, and that, but for the deficiency, the result of his trial would likely have been different.

Petitioner first claims that counsel was ineffective for selecting juror Eddy Haidar without his input and in spite of Haidar's hesitation in revealing his wife's place of employment. Petitioner surmises that this "rais[ed] a question of whether Haidar's hesitation was based on fear of [petitioner]." Appellate Br. 25. In order to prevail on a claim of ineffective assistance based on trial counsel's failure to challenge a prospective juror during *voir dire*, a petitioner must show that the prospective juror was actually biased against him. <u>Murphy v. Florida</u>, 421 U.S. 794, 800 (1975); <u>Hughes v. United States</u>, 258 F.3d 453, 458 (6th Cir. 2001). "Actual bias is 'bias in fact'-the existence of a state of mind that leads to an inference that the person will not act with entire impartiality." <u>U.S. v. Torres</u>, 128 F.3d 38, 43 (2d Cir. 1997). Actual bias can be found where a prospective juror admits partiality, or where the same can be inferred from his or her

answers to *voir dire* questions. Torres, 128 F.3d at 43. A review of the record indicates that Haidar never expressed during *voir dire* or in his questionnaire that he could not be fair and impartial. Rather, Haidar merely expressed reluctance to provide the answers from his juror questionnaire orally. Accordingly, petitioner has not shown that Haidar was actually based against the petitioner. Because the Court has not found actual bias, prejudice under Strickland v. Washington is not presumed. Mitchell v. Herbert, 01-CV-681(RJA)(VEB), 2008 WL 342975 (W.D.N.Y. Feb. 6, 2008) (citing Hughes, 258 F.3d at 463). Because petitioner has not met the prejudice element under Strickland, the Court finds no need to reach the issue of whether trial counsel's decision not to challenge Juror Haidar was reasonable trial strategy.

Next, petitioner asserts that defense counsel's failure to call the examining doctor or a defense expert amounted to less than meaningful representation. The Second Circuit has held that under certain circumstances involving sexual offenses, the failure to call an expert witness may be grounds for an ineffective assistance of counsel claims. See Lindstadt v. Keane, 239 F.3d 191 (2d Cir. 2001); Pavel v. Hollins, 261 F.3d 210 (2d Cir. 2001); Gersten v. Senkowski, 426 F.3d 588 (2d Cir. 2005). Petitioner argued on direct appeal that trial counsel could have called the examining physician or another medical doctor "who might have testified with regard to the lack of physical proof," and serve to "offset the prejudicial

nature of Dr. Coyne's testimony." The Court does not find that counsel's decision not to call the examining physician, or its own medical expert, prejudiced the petitioner. The record indicates that trial counsel cross-examined Dr. Coyne about the absence of physical trauma in light of the victim's allegation of rape. In particular, counsel elicited testimony from Coyne that there were no objective findings in the victim's medical records, *i.e.* physical damage, semen deposits, or pubic hairs or fibers. T. 225-26. Had petitioner's trial counsel called his own medical witness, the testimony would have likely established similar facts that counsel was able to demonstrate on cross-examination. In viewing "totality of the evidence before the judge or jury," the Court does not find that counsel's failure to call a medical witness sufficiently prejudicial under the terms of Strickland. 466 U.S. at 695-96.

Finally, petitioner contends that defense counsel failed to effectively cross-examine a prosecution witness, the victim's upstairs neighbor, to whom the victim made her complaint of rape.[2] Pet. ¶ 22(D). In a trial for forcible rape, any witness who heard the complainant promptly disclose the fact that she had been raped may testify at trial that such a statement was made. Although it is hearsay, this testimony is admissible under the "prompt outcry"

---

[2] It appears that petitioner is challenging his counsel's failure to object to the following testimony: "[The victim] came up. She was crawling up the stairs and she had on a jersey, and I asked her what was wrong and she was like, somebody tried to rape her." T. 125.

exception to the hearsay rule. People v. McDaniel, 81 N.Y.2d 10 (1993) (holding that only the fact of a complaint and not its accompanying details are admissible under the "prompt outcry" hearsay exception). Since the witness in question did not relate details or particular facts of the incident, counsel had no grounds on which to object. See, e.g., Burgos-Santos v. Greene, No. 05 Civ. 3736 (PKC)(RLE) 2009 WL 1916376 at *10 (S.D.N.Y. Mar. 23, 2009) (Ineffective assistance of counsel claim based on a failure to object was meritless where counsel had no reason to object to Rosario and Brady issues at trial). Petitioner, therefore, does not set forth a legal basis for habeas relief.

Based on the foregoing, the Appellate Division's rejection of petitioner's ineffective assistance of counsel claim was neither contrary to nor an unreasonable application of clearly established Supreme Court precedent, and this claim is dismissed.

### 4. Weight of the Evidence

Finally, petitioner contends that his conviction is against the weight of the evidence. Pet. ¶ 22(C). Specifically, he argues that while legally sufficient, the evidence of forcible rape was minimal, lacking any evidence of a physical assault in spite of the difference in size between himself and the victim. Appellate Br. 29-30. On direct appeal, the Appellate Division held that the verdict was not against the weight of the evidence. McHerrin, 19 A.D.3d at 1167.

Challenges to the weight of the evidence supporting a conviction, unlike challenges to the sufficiency of the evidence, are not cognizable on federal habeas review. Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996). A claim that a verdict was against the weight of the evidence derives from New York Crim. Proc. Law ("C.P.L.") § 470.15(5), which permits an appellate court in New York to reserve or modify a conviction where it determines "that a verdict of conviction resulting in a judgment was, in whole or in part, against the weight of the evidence." C.P.L. § 470.15(5). Thus, the "weight of the evidence" argument is a pure state law claim grounded in the criminal procedure statute, whereas a legal sufficiency claim is based on federal due process principles. People v. Bleakley, 69 N.Y.2d 490, 495 (1987). Since a weight of the evidence claim is purely a matter of state law, it is not cognizable on habeas review. See U.S.C. § 2254(a); Estelle v. McGuire, 502 U.S. 62, 68 (1991) ("In conducting habeas review, a federal court is limited to deciding whether a conviction violated the Constitution, laws, or treaties of the United States."). This claim is therefore dismissed because it does not present an issue of federal constitutional magnitude.

IV. Conclusion

For the reasons stated above, Marques McHerrin's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed. Because petitioner has failed to make a

"substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000). The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person. Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca

_____
MICHAEL A. TELESCA
United States District Judge

Dated:   Rochester, New York
         December 1, 2009